## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HI-TECH PHARMACEUTICALS, INC., a Georgia corporation, | ) ) ) |
| Plaintiff, | ) ) COMPLAINT |
| v. | ) ) Civil No. |
| FEDERAL TRADE COMMISSION, an Agency of the United States, | ) _____ ) ) ) |
| Defendant. | ) ) |
| _____ | ) |

## COMPLAINT FOR DECLARATORY RELIEF

COMES NOW, plaintiff Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech" or "Plaintiff"), by and through the undersigned counsel of record, and for its Complaint against defendant Federal Trade Commission ("FTC") (hereinafter, the "Action"), states as follows:

### I.    NATURE OF ACTION

1.    This Action is one for declaratory relief, judicial estoppel, quasi-estoppel, equitable estoppel and collateral estoppel relating to discrete questions of law.

2.     Plaintiff seeks a narrow and specific declaratory judgment relating to the "competent and reliable scientific evidence" substantiation standard for advertising claims that:   (i) is defined in a Final Judgment and Permanent Injunction dated December 16, 2008 rendered by the United States District Court for the Northern District of Georgia, Atlanta Division, in *Federal Trade Commission v. National Urological Group, Inc.*, Case No. 1:04-CV-3294-CAP, and (ii) is the substantiation standard being used to regulate Plaintiff's commercial speech.

3.     Specifically, Plaintiff seeks the following judicial declarations:

a.     That the plain language used in the Final Judgment and Permanent Injunction to define "competent and reliable scientific evidence" has no fixed meaning, such as two double blind, placebo controlled, product specific studies.   Rather, as explained by the FTC in its regulatory guidelines and in opposition to challenges under the First and Fifth Amendments to the U.S. Constitution and under the FTC Act and the Administrative Procedures Act ("APA"), the meaning of this language requires case, product and claim specific adjudication and may result in different meanings even in the same case depending on, *inter alia*:  (i) the covered product or service being advertised (whether a drug, food, device, weight-loss product or service); (ii) the nature of the claims being challenged and reviewed under this standard (whether qualified or unqualified,

establishment or non-establishment, and specific or non-specific); and (iii) the evidence in the advertiser's possession when each claim was made that allegedly substantiates the challenged claim;

b.     That the clear and unambiguous elements of the substantiation standard defined in the Final Judgment and Permanent Injunction (Doc. 230) entered in *Federal Trade Commission v. National Urological Group, Inc., et al.*, 1:04-cv-03294 (hereinafter "Final Judgment and Permanent Injunction"), are satisfied if a challenged product or service claim, when made, is supported by evidence, including without limitation tests, analyses, research or studies, that:  (i) is based on the expertise of professionals in the relevant area; (ii) is conducted and evaluated in an objective manner by a person qualified to do so; (iii) uses procedures generally accepted in the profession to yield accurate and reliable results; and (iv) has a causal connection to the particular claim being challenged as interpreted by the Court;

c.     That in any action to enforce the Final Judgment and Permanent Injunction the FTC is legally bound by the plain language it proposed and has used to define "competent and reliable scientific evidence" and is estopped under one or more of the doctrines asserted herein to:  (i) deny the plain language and meaning of the substantiation standard in the Final Judgment and Permanent Injunction; and

(ii) assert a fixed meaning for any product or service claim challenged under the Final Judgment and Permanent Injunction;

   d. That the FTC Act, the First and Fifth Amendments and the APA, given the FTC's refusal to engage in notice and comment rulemaking, preclude the FTC from arguing in any judicial proceeding that an obligation to have "competent and reliable scientific evidence" substantiating an objective product or service claim before such a claim is made requires any preordained amount of substantiation greater than the amount of substantiation necessary to make a product claim truthful and non-misleading, as recognized by the D.C. Circuit in *Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999) ("*Pearson I*") and its progeny.

   e. That any judgment, order, sanction or penalty in an action to enforce the Final Judgment and Permanent Injunction based on a different standard or an additional requirement or some other construction of "competent and reliable scientific evidence" as defined in the Final Judgment and Permanent Injunction is void *ab initio*.

   4. Plaintiff seeks the aforementioned relief because, in response to a prior, voluntarily dismissed complaint, *Hi-Tech Pharmaceuticals, Inc. v. Federal Trade Commission*, Case No. 1:12-CV-2043-CAP (N.D. Ga. 2012), the FTC denied that it has adopted any new rule or standard for "competent and reliable

scientific evidence" that it is applying or trying to apply in *Federal Trade Commission v. National Urological Group, Inc.*, Case No. 1:04-CV-3294-CAP to regulate Plaintiff's commercial speech.  Accordingly, Plaintiff seeks judicial relief ensuring that the old rule, standard or guideline under the FTC Act defining "competent and reliable scientific evidence" and included in the Final Judgment and Permanent Injunction is enforced.

5.     Absent the declaratory judgment sought in this Action, Plaintiff would be on the "horns of a dilemma" and face a Hobson's choice.

6.     Although the FTC is denying that it is trying to enforce a new rule or standard for "competent and reliable scientific evidence" to regulate Plaintiff's commercial speech, the FTC is admittedly trying to impose a fixed meaning of "competent and reliable scientific evidence" (*i.e.,* two double blind, placebo controlled, product specific studies), rather than enforce the actual definition in the Final Judgment and Permanent Injunction, even though: (a) the FTC did *not* propose any fixed meaning when it submitted the Final Judgment and Permanent Injunction to the Northern District of Georgia District Court for the regulation of Plaintiff's commercial speech; (b) the actual language proposed and adopted by the Northern District of Georgia District Court does *not* permit a fixed meaning for the regulation of any future product claims; and (c) the requirement of a fixed meaning would run afoul of the FTC's own explanation of the standard in court documents

and industry guidelines, and would give rise to serious constitutional concerns as well as challenges under the FTC Act and APA.

7.     Irrespective of the outcome of the FTC's enforcement action in *Federal Trade Commission v. National Urological Group, Inc.*, Case No. 1:04-CV-3294-CAP, Plaintiff at this moment is being forced to either comply with the new standard the FTC is trying to impose and thereby put itself out of business, at least for a period of time while it incurs the potentially ruinous expense of complying with that amount of substantiation for all its covered products, services and claims, or risk serious civil penalties for engaging in commercial speech, including speech that the FTC does not even claim is false or misleading.

8.     For these reasons, Plaintiff seeks immediate declaratory relief against the FTC.

## II.     PARTIES

9.     Plaintiff Hi-Tech Pharmaceuticals, Inc., is a Georgia corporation with its principal place of business in the State of Georgia.  Hi-Tech is one of the largest manufacturers and distributors of dietary supplements, including weight loss products, in the United States.  Hi-Tech sells its products to more than 100,000 retail locations including:  GNC, CVS, Walgreen's, Wal-Mart, K-Mart, Kroger and convenience stores nationwide. Hi-Tech also sells directly to consumers, healthcare practitioners, and food and dietary supplement companies.  Among

other weight-loss products, Hi-Tech produces, markets and sells Fastin, Lipodrene, Benzedrine and Stimerex-ES—products that are the subject of the FTC's enforcement action in *Federal Trade Commission v. National Urological Group, Inc.*, Case No. 1:04-CV-3294-CAP.

10.    Defendant Federal Trade Commission is an independent administrative agency of the United States, organized pursuant to the FTC Act, 15 U.S.C. §§ 41, *et seq.*

### III.    <u>JURISDICTION AND VENUE</u>

11.    This Action seeks declaratory and ancillary equitable relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*

12.    There exists an actual and justiciable controversy between the parties regarding the meaning of "competent and reliable scientific evidence" as defined in the Final Judgment and Permanent Injunction rendered in *Federal Trade Commission v. National Urological Group, Inc.*, Case No. 1:04-CV-3294-CAP.

13.    Declaratory relief will resolve this controversy and is necessary to, *inter alia,* eliminate the dilemma Plaintiff is facing as a result of the  FTC's actions, ameliorate the present and immediate detrimental impact the FTC's actions are having on Hi-Tech's current business operations, including its research and advertising programs, eliminate the chilling effect the FTC's actions are

having on Hi-Tech's protected commercial speech, and avoid serious constitutional and statutory concerns raised by the FTC's actions.

14.     The Court has subject matter jurisdiction over this Action pursuant to 28 U.S.C. §§ 1331, 1337 and/or 1346 because all of the claims asserted herein arise under the Constitution and the laws of the United States, and concern the meaning of a Final Judgment and Permanent Injunction issued by a Federal District Court, not just as it relates to any pending enforcement action, but also as it relates to any and all current and future actions under the Final Judgment and Permanent Injunction not part of the enforcement action and irrespective of its outcome.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 139l(e).

## IV.    GENERAL ALLEGATIONS

### The Plain and Unambiguous Meaning of Competent and Reliable Scientific Evidence

16.     The District Court for the Northern District of Georgia (the "Georgia Court"), in response to Plaintiff's constitutional and statutory challenges to the FTC's requirement that Plaintiff possess competent and reliable scientific evidence before making an objective weight-loss claim, and in accordance with the FTC's regulatory guidelines and stated position in judicial proceedings as to the meaning of this substantiation standard, correctly held that the requirements of this standard

are clear and that the application of this standard in any given case may result in many different levels of claim substantiation.

17.   Referring to the same definition of "competent and reliable scientific evidence" in the Final Judgment and Permanent Injunction, the Georgia Court stated:

> The court can find no reason why this definition would not give people of ordinary intelligence a reasonable opportunity to understand what evidence is required to substantiate their health-related claims. ***Obviously, this definition is context specific and permits different variations on "competent and reliable scientific evidence" depending on what pertinent professionals would require for the particular claim made***. Thus, the size, duration or protocol of a scientific study, the number or type of scientific studies required to substantiate a claim, and the proper mechanism for extrapolating results from studies will obviously vary from circumstance to circumstance depending upon the expert evidence presented. ***However, the standard by which these issues of fact are resolved is clear, and an advertiser can be reasonably certain of what substantiation will be required by conferring with appropriate professionals or experts.  The fact that different scientific evidence is required for different claims impacting different products does not mean that the FTC can enforce its act arbitrarily; instead, it simply means that different claims require different substantiation.***

*FTC v. National Urological Group, Inc.*, 645 F.Supp. 2d 1167, 1186-87 (N.D. Ga. 2008).

18.   The Georgia Court's rationale in upholding the FTC's substantiation standard—that the requirements of this standard are clear and not ambiguous but merely context specific and permit different variations on "competent and reliable scientific evidence" depending on what a qualified professional would require for a

challenged claim—is in accord with the holding in *Basic Research, LLC v. FTC,* 807 F. Supp. 2d 1078 (D. Utah 2012), where the FTC similarly argued and agreed that the terms of its substantiation standard are clear and unambiguous.

19.   In *Basic Research*, the district court was requested to declare the meaning of "competent and reliable scientific evidence" as defined by an FTC consent order.  The consent order used the same definition included in the Final Judgment and Permanent Injunction and found in many FTC consent orders and judgments.   As in Plaintiff's order, to substantiate a product claim, the FTC required the advertiser to possess "tests, analyses, research, studies, or other evidence based upon the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results."

20.   In reviewing the FTC's substantiation standard, the *Basic Research* court granted partial summary judgment in favor of the dietary supplement advertiser, who had been threatened by the FTC with a claim for civil contempt for allegedly not having competent and reliable scientific evidence supporting the challenged product claims, and who brought an action for declaratory relief seeking the same relief Plaintiff seeks in this case.

21.     Specifically, the *Basic Research* Court held, as the Court is requested to hold here, that the plain and unambiguous meaning of the FTC's substantiation standard means what it says and requires an advertiser to have evidence, including without limitation tests, analyses, research or studies, that:   (i) is based on the expertise of professionals in the relevant area; (ii) is conducted and evaluated in an objective manner by a person qualified to do so; (iii) uses procedures generally accepted in the profession to yield accurate and reliable results; and (iv) has a causal connection to the particular claim being challenged as interpreted by the Court.

22.     Under this standard, the FTC has provided guidelines but has *not* established any "requirements for size, duration, or protocol of a scientific study, does not provide any single fixed formula for the number or type of scientific studies required to substantiate a claim, and does not specify the proper mechanism for extrapolating results of a study."  *National Urological Group, Inc.*, 645 F.Supp. 2d at 1186.  Depending on the number of products and claims at issue, and the evidence presented in support of each claim, federal courts have recognized that "the many variations the 'competent and reliable scientific evidence' could take in each individual case."  *Direct Marketing Concepts, Inc. v. FTC,* 581 F.Supp. 2d 115, 118 (D. Mass. 2008).

23.     As the FTC conceded in *Basic Research*, the FTC's substantiation standard is not reasonably susceptible to any other interpretation.   Attached as Exhibit "1" is the Transcript of Proceedings from *Basic Research, LLC v. FTC,* 807 F. Supp 2d 1078 (D. Utah 2012).

### The FTC Is Barred from Claiming that Its Substantiation Standard Has a Fixed or Preordained Meaning with Respect to any Future Product Claims

#### *Judicial Estoppel*

24.     The law assumes that there is only one truth about any given set of circumstances.   Based on this assumption, courts have adopted the doctrine of judicial estoppel to bar litigants from taking inconsistent positions in different legal proceedings and making a mockery of the judicial system.

25.     The circumstances under which judicial estoppel may be invoked vary widely.   The doctrine is flexible and does not require every element to be satisfied. The doctrine plainly applies, though, when the following circumstances are present:   (a) the party to be estopped is asserting a position that is incompatible with a position taken in a prior judicial or administrative proceeding; (b) the prior inconsistent position was successfully maintained; and (c) the inconsistent positions were asserted intentionally and not by inadvertence or mistake.   *Moses v. Howard University Hosp.,* 606 F.3d 789, 798 (D.C. Cir. 2010).

26.     Each of these elements is present here.   As discussed further below, the FTC has taken the position in numerous court proceedings that "competent and

reliable scientific evidence" has no fixed meaning. No fixed level of substantiation is preordained before any claim is made, and the amount of substantiation required depends upon the totality of the circumstances and what is necessary to make a claim truthful and not misleading.

27.   In fact, the plain and unambiguous language comprising the elements of this substantiation standard permits different variations on "competent and reliable scientific evidence" depending on what a professional would require for a particular product claim. Thus, the size, duration or protocol of a scientific study, the number or type of scientific studies required to substantiate a claim, and the proper mechanism for extrapolating results from studies will obviously vary from circumstance to circumstance depending on different factors, including, without limitation, the type of product or service at issue, the nature of the challenged claim, and the evidence presented to substantiate the claim, which the FTC may challenge as not competent or reliable to substantiate the claim under the totality of the circumstances.

28.   The FTC has intentionally taken and has successfully maintained this position in response to numerous constitutional challenges under the First and Fifth Amendments and in response to similar challenges under the FTC Act and APA. Accordingly, the FTC is now judicially estopped from asserting an inconsistent position in litigation involving its competent and reliable scientific evidence

standard, including any attempt to claim that an adjudication of one product claim establishes the substantiation standard for another product claim.

29.     Whereas a court in determining whether an objective product claim is supported by competent and reliable scientific evidence as to one product claim may reach a similar conclusion with respect to similar products or claims previously presented to the court, an advertiser cannot be precluded from defending itself and presenting evidence of claim substantiation on a product-by-product and claim-by-claim basis even in the same case.  An adjudication of a past claim by the FTC is *not* binding upon any future claim under the FTC's substantiation standard as the FTC has explained that standard in judicial proceedings.

30.     Thus, the FTC is judicially estopped from taking the position and from trying to avail itself of any conclusion that an adjudication of any past claim based on the evidence then presented to the court bars the full and unrestricted adjudication of any future claim based on any and all evidence the Plaintiff may present to substantiate the claim.

### *Quasi-Estoppel*

31.     The doctrine of "quasi-estoppel" is based on the same assumption underlying the doctrine of judicial estoppel, but is broader in its application in that it is not limited to positions taken in litigation.  Quasi-estoppel forbids a party from

accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position in litigation to avoid corresponding obligations or effects.  *In re Davidson*, 947 F.2d 1294, 1297 (5th Cir. 1991).  For example, federal courts have invoked this doctrine to bar litigants who characterized a transaction one way on their tax returns to obtain tax benefits from subsequently asking a court to treat the transaction another way to derive new benefits in litigation.  *Shook v. United States*, 713 F.2d 662 (11th Cir. 1983).

32.    Here, the FTC has taken advantage of its "interpretive" and adjudicatory powers under the FTC Act, and has eschewed adopting a substantive or procedural rule governing claim substantiation, so as to avoid public and judicial scrutiny of its substantiation program under the First and Fifth Amendments and the APA.  Moreover, the FTC has repeatedly informed the industry at seminars and in regulatory guidelines that there is no rule and that the level of substantiation necessary to make any product claim is not preordained but must be litigated on a case-by-case, product-by-product and claim-by-claim basis.  Accordingly, the FTC cannot avoid the burdens of this choice and its corresponding out-of-court statements.

33.    The FTC is barred from arguing that its competent and reliable scientific evidence standard establishes a fixed level of substantiation for any product claims, or from trying to avail itself of any such conclusion that would

limit or restrict an advertiser from fully defending itself under the FTC Act in connection with a product claim, including, but not limited to, presenting evidence to substantiate a claim challenged under any judgment or order.

### Equitable Estoppel

34.    The FTC is also equitably estopped from arguing that its competent and reliable scientific evidence standard establishes a fixed level of substantiation for any product claim, or from trying to avail itself of any such conclusion that would limit or restrict an advertiser from fully defending itself under the FTC Act, including, but not limited to, presenting evidence to substantiate a claim challenged under any judgment or order.

35.    Pursuant to the Georgia Court's direction, the FTC drafted and submitted for review, comment and approval the Final Judgment and Permanent Injunction.  The FTC included and defined in the Final Judgment and Permanent Injunction the substantiation standard that would govern Plaintiff's commercial speech for the next five years.  Plaintiff relied upon the FTC's reasoned decision to require Plaintiff to possess competent and reliable scientific evidence as defined in the proposed Final Judgment and Permanent Injunction, and did not object to the use of that standard to govern its commercial speech for the next five years.

36.    Based on the FTC's statements both in regulatory guidelines and in judicial proceedings, Plaintiff reasonably believed that the substantiation standard

included in the Final Judgment and Permanent Injunction had no fixed meaning, but meant what it said, meant what the FTC has said it means in denying that there is some preordained amount of substantiation required by that standard before a product claim can be lawfully made, and meant what courts, including the Georgia Court, has said about the FTC's substantiation standard.

37.   Accordingly, the FTC is equitably estopped from trying to change its position.  It may not now claim that competent and reliable scientific evidence requires a fixed level of claim substantiation, and attempt to bar, limit or restrict Plaintiff from trying to fully defend itself under the FTC's competent and reliable scientific evidence standard, as that standard has been defined in the Final Judgment and Permanent Injunction and applied under the FTC Act, including by limiting or restricting the evidence a Court may review to substantiate a claim.

### *Collateral Estoppel*

38.   In addition to the aforementioned estoppel doctrines, the FTC is barred by the doctrine of collateral estoppel from re-litigating the issue of whether the FTC's competent and reliable scientific evidence standard is a rule or a guideline, including whether it requires any fixed amount of substantiation before a claim is made.  The FTC's position that competent and reliable scientific evidence is typically required for weight-loss claims, but has no fixed meaning but may, in fact, have many different meanings even in the same case depending on the

products and claims at issue, has been actually raised and litigated by the FTC, and necessary to judgments denying constitutional and statutory challenges in favor of the FTC.

39.    Accordingly, the FTC is collaterally estopped from trying to construe or interpret the meaning of "competent and reliable scientific evidence" as defined in the Final Judgment and Permanent Injunction as meaning something other than what the plain and unambiguous language used to define that standard means.  It does not require a fixed amount of claim substantiation, including, without limitation, two well-controlled, product specific studies.

40.    The plain language of the standard defined in the Final Judgment and Permanent Injunction is clear and unambiguous and not subject to any interpretation that would preordain an amount of substantiation for future product claims.  Thus, if and to the extent that the FTC seeks to require any minimum level of substantiation under the Final Judgment and Permanent Injunction, the FTC must meet its burden of proof on a product-by-product and claim-by-claim basis. It is collaterally estopped from circumventing this requirement.

**The FTC's Refusal to Engage in Rulemaking Precludes any Other Conclusion Regarding the Meaning of Competent and Reliable Scientific Evidence**

41.    Neither Congress under the FTC Act nor the FTC through its notice-and-comment rule making powers have adopted any rule or imposed any standard requiring any fixed amount of substantiation that an advertiser must have before making an objective product claim.  The FTC has, in fact, denied rulemaking petitions that tried to establish either a substantive or procedural rule or enforcement protocol defining what constitutes "competent and reliable scientific evidence" and providing an outlet for protected commercial speech, including potentially misleading speech, where possible or perceived deception could be resolved with further speech solutions rather than an outright ban or threatened law enforcement action under a high substantiation standard.  *See* FTC's November 30, 2000 denial of the December 20, 1999 Petition for Rulemaking filed on behalf of Dr. Julian Whitaker *et al*. ("Whitaker Petition"); FTC's April 1, 2004 denial of the April 16, 2003 Petition for Rulemaking filed on behalf of The First Amendment Health Freedom Association ("FAHFA Petition").

42.    The FTC's denial of rulemaking petitions is significant and, in conjunction with the FTC's statements to the industry in its regulatory guidelines and in judicial proceedings that competent and reliable scientific evidence has no fixed or preordained meaning, but is consistent with the requirements of the FTC Act and the APA and the constitutional limitations under the First and Fifth

Amendments, is dispositive in this case and bars any finding or ruling affixing any one-size-fits-all meaning to "competent and reliable scientific evidence."

43.     For the additional reasons discussed below, Plaintiff is entitled to the same order issued in *Basic Research* to clarify and protect its First Amendment rights under the Final Judgment and Permanent Injunction.

### The FTC Act's Limitation on The FTC's Substantiation Standard Included in the Final Judgment and Permanent Injunction

44.     Congress has conferred authority on the FTC to promulgate rules, guidelines and policy statements to carry out the provisions of the FTC Act.

45.     Specifically, the FTC has the power to adopt "interpretive rules and general statements of policy with respect to unfair or deceptive acts or practices," "define with specificity acts or practices which are unfair or deceptive," and prescribe requirements "for the purpose of preventing such acts or practices."  15 U.S.C. §§ 46(g), 57a(a).

46.     The FTC Act distinguishes interpretive rules, guidelines and policy statements that define what constitutes "unfair or deceptive acts or practices" from "requirements prescribed for the purpose of preventing such acts or practices," violations of which also constitute unfair or deceptive acts or practices.  *Katharine Gibbs School Inc. v. FTC*, 612 F.2d 658, 662 (2d Cir. 1979).  "Requirements designed to prevent unfair [or deceptive acts or] practices are predicated upon the existence of unfair [or deceptive acts or] practices."  *Id.*  Accordingly, either

through notice-and-comment rulemaking or the adjudicatory process, the FTC Act requires that preventative rules must first identify "with specificity . . . those acts or practices which are unfair or deceptive" that the rule was enacted to prevent. *Id.* The FTC cannot content itself with treating violations of *non*-statutory "'requirements prescribed for the purpose of preventing' unfair [or deceptive acts or] practices *as themselves* the unfair [or deceptive acts or] practices." *Id.* ("We think that Congress expected more than [that]") (emphasis added).

47.     Therefore, the FTC's competent and reliable scientific evidence standard, which the FTC uses to impose liability on advertisers in the first instance under Sections 5 and 12 of the FTC Act, cannot be interpreted under the FTC Act as a requirement designed to *prevent* deceptive advertising.  Rather, liability can only attach if the absence of such evidence would establish that the challenged product claim *is false or misleading* under the FTC Act.

48.     While federal agencies have the power to give content to statutory standards by means of case-by-case adjudication, they "may not use adjudication to circumvent . . . rulemaking procedures." *Cities of Anaheim, Riverside, Banning, Colton and Azusa, Cal. v. F.E.R.C.*, 723 F.2d 656, 659 (9th Cir. 1984).  Thus, the FTC may not invoke its "interpretive" powers to create new substantive benchmarks and thereby expand the scope of unlawful activity under the FTC Act to include preventative requirements.  *See St. Luke's Methodist Hospital v.*

*Thompson*, 182 F. Supp. 2d 765, 784 (N.D. Iowa 2001) (agency cannot seize upon "inherently vague reasonableness limitation . . . to impose an additional significant substantive benchmark"); *United States v. Picciotto,* 875 F.2d 345, 348 (D.C. Cir. 1989) (agency could not "interpret" open-ended phrase "additional reasonable conditions" to mandate a specific condition).   To give effect to a new substantive benchmark adopted through "interpretation of amorphous regulatory or statutory language would 'make a mockery of . . . the APA which was designed to enable an agency to use a carefully devised procedure to convert vague statutory and regulatory standards into a reasonably clear set of rules."   *St. Luke's Methodist Hospital*, 182 F. Supp. 2d at 784 (citing *Mission Group Kansas, Inc. v. Riley*, 146 F.3d 775, 782 (10th Cir. 1998)).

### *The Rules Adopted by the FDA Governing Claim Substantiation Plainly Show Why the FTC Is Overreaching Here*

49.    Unlike the FTC, the Food & Drug Administration ("FDA") *has* engaged in rulemaking under the Food, Drug and Cosmetic Act ("FDCA"), so as to come up with valid rules preventing false and misleading product labeling, including labeling for pharmaceutical drugs.   The FDA's substantiation program, which regulates product labeling for drugs, is informative of the FTC's standard for weight-loss claims for two reasons:   (1) The FDA's substantiation standard for drugs should be higher than the substantiation necessary for dietary supplements and weight loss products, which was one of the objectives of Congress in enacting

the Dietary Supplement Health and Education Act of 1994; and (2) the FDA's substantiation standard, which was promulgated as a preventative requirement, may lawfully regulate protected commercial speech, whereas the FTC's substantiation standard, as merely an "interpretation" of what constitutes false and misleading advertising, is far more constitutionally suspect.

50.    The D.C. Circuit in *Pearson I* rejected the FDA's initial attempt to promulgate a high substantiation standard for *all* health claims in product labeling. Its attempt was held unconstitutional and violative of the APA because the standard operated as an outright ban on protected commercial speech, including potentially misleading speech. *See Wallach, D.V.M., N.D. v. Crawford, D.V.M.,* No. 04CV216 BTM (WMC), 2005 WL 6054963, at *5 (S.D. Cal. 2005) ("*Wallach*") (Plaintiffs have standing to challenge FDA rule treating non-exempt publications disseminated with product as "labeling" because rule had "a patent *chilling effect on Plaintiffs' speech* which effects their day to day operations") (emphasis added).

51.    Under *Pearson I* and the new rules promulgated by the FDA, the FDA continues to require a high level of substantiation but only for some health claims. For example, the FDA authorizes *unqualified* claims when it "determines, based on the totality of publicly available scientific evidence . . . , that there is *significant scientific agreement*, among experts qualified by scientific training and experience

to evaluate such claims, that the claim is supported by such evidence." *Wallach,* 2005 WL 6054963, at *5 n. 6 (citing FDA's post-*Pearson I* rule).  However, the FDA is required to authorize *qualified* claims if they are supported by "credible evidence" – the substantiation standard for health claims under the First Amendment that the government cannot suppress under *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 100 S.Ct. 2343 (1980) – unless there is empirical evidence that a disclaimer would not correct for deceptiveness.

52.    The First Amendment imposes "a very heavy burden" upon the government if it seeks to prohibit or suppress a particular claim—particularly when the government is engaged in content-based restrictions on speech. *See Pearson v. Thompson,* 141 F.Supp. 2d 105, 112 (D.D.C. 2001).  Whether in the form of a prior restraint or a comprehensive law enforcement scheme designed and implemented to chill protected commercial speech, including potentially misleading speech, any such ban or prohibition of a claim would be constitutional and valid under the APA "only under narrow circumstances, *i.e.,* when there was *almost no qualitative evidence in support of the claim* and where the government provided *empirical evidence proving that the public would still be deceived even if the claim was qualified by a disclaimer*."  *Whitaker v. Thompson*, 248 F.Supp. 2d 1, 8-9, 13 (D.D.C. 2002) (holding FDA's prohibition of health claim unconstitutional where

one third of evidence examined by FDA supported claim, and FDA failed to

produce any "empirical evidence that an appropriate disclaimer would confuse

customers and fail to correct for deceptiveness") (emphasis added).

53.     Pursuant to the FDA's Guidance Document, which is similar to the

industry guidelines published by the FTC, the claim review process:

> involves a series of steps to assess scientific studies and other data,
> eliminate those from which no conclusions about the substance/disease
> relationship can be drawn, rate the remaining studies for
> methodological quality and evaluate the strength of the totality of
> scientific evidence by considering study types, methodological quality,
> quantity of evidence for and against the claim (taking into account the
> numbers of various types of studies and study sample sizes), relevance
> to the U.S. population or target subgroup, replication of study results
> supporting the proposed claim, and overall consistency of the
> evidence. ***After assessing the totality of the scientific evidence, FDA
> determines whether there is [significant scientific agreement] to
> support an authorized health claim, or credible evidence to support a
> qualified health claim***.

*Alliance for Natural Health U.S. v. Sebelius,* 714 F. Supp. 2d 48, 65-66 (D.D.C.

2010) (emphasis in the original).   Under the FDA's Guidance Document, which

the government uses to regulate drugs, one credible study is enough to substantiate

a qualified health claim.  *Id.* at 68-69 (requiring FDA to allow claim supported by

one credible study and remanding with direction for FDA to come up with

appropriate disclaimer/qualifying language); *Pearson v. Shalala,* 130 F.Supp. 2d

105, 115 (D. D.C. 2001) ("The mere absence of significant affirmative evidence in

support of a particular claim . . . does not translate into negative evidence 'against' it.").

54.     Under *Pearson I*, it is no more constitutional for the FTC to treat qualified and unqualified claims the same as it was for the FDA.   Rather, in reviewing a claim challenged by the FTC, the Court must determine whether the claim was qualified by the advertisement, and therefore does not require the same level of claim substantiation as an unqualified claim.

### The Government's Regulation of Commercial Speech Under the Lanham Act Also Shows Why the FTC Is Overreaching Here

55.     Because the FTC, unlike the FDA, has not exercised its rulemaking powers and has not adopted any substantive or procedural rules regulating the substantiation of objective product claims, the FTC Act is more akin to the Lanham Act than the FDCA.   Under the Lanham Act, the plaintiff must prove that an advertisement is false or misleading, *not* just unsubstantiated.   *E.g., Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.,* 902 F.2d 222, 229 (3d Cir. 1990).   For example, if a non-establishment claim is being challenged, the plaintiff must prove that the advertisement is false or misleading, or that the claim is "completely unsubstantiated." If an establishment claim is being challenged, the plaintiff must prove that the claim is not supported by "sufficiently reliable" evidence that would support the claim with "reasonable certainty," or that the evidence relied upon "does not establish what the advertisement says it does."

*Riddell, Inc. v. Schutt Sports, Inc.*, 724 F. Supp. 2d 963, 971, 973 (W.D. Wis. 2010) (citing *Castrol, Inc. v. Quaker State Corp.,* 977 F.2d 57, 62-63 (2d Cir. 1992)); *see also Bracco Diagnostics, Inc. v. Amersham Health, Inc.* 627 F.Supp. 2d 384, 467 (D.N.J. 2009) ("establishment or 'tests prove' claims can be challenged by 'demonstrating that the tests were not sufficiently reliable' to permit the conclusion reached or by showing that 'the tests, even if reliable, do not establish the proposition asserted.'") ("*Bracco*") (citation omitted).

56.    To make a claim under the Lanham Act that would overcome a challenge that the claim is completely unsubstantiated, general expertise in an industry has been found sufficient to "substantiate" a product claim.  *See Labware, Inc. v. Thermo Labsystems, Inc.,* No. Civ. A.04-2545, 2005 WL 1541028, at *10 (E.D. Pa. 2005) (advertiser's "prior experience with [technology], along with the internal product tests conducted on [new device], provided Thermo with more than sufficient substantiation for its representations" about how new, untested device would perform); *Accu-Sort Systems, Inc. v. Lazerdata Corp.,* 820 F.Supp. 928, 932 n.7 (E.D. Pa. 2003) (district court noting that a no-substantiation argument was not made, and could not be made, because there was "evidence of record that the author of the [comparative] Lazerdata brochure was, at minimum, generally familiar with Accu-sort's technology, Lazerdata's technology, and the technologies employed by the laser scanning industry").

57.    A product-specific study normally is not required under the Lanham Act to support a non-establishment claim.  In *Florida Breckenridge, Inc. v. Solvay Pharmaceuticals, Inc.*, No. 97-8417-CIV-RYSKAMP, 1998 WL 468 753 (S.D. Fla. March 1998), for example, the plaintiff's "main bone of contention with [its competitor] seems to be that 'a claim that the ESTRATEST® and the MENOGEN Products are generically equivalent should not be made until such time as well controlled testing has been completed.' . . . In a non-FDA regulated world where 'generic equivalence' does not mean FDA 'generic equivalence,' Solvay cannot prevail on this ground."  *Id.* at *12 n.9.  Evidence that the products "contained the same active ingredients" supported the claim.  *Id.* at *12.

58.    To make an establishment claim, which requires some scientific evidence, the Lanham Act does not require the same level of scientific certainty as the FDA requires for *unqualified* health claims.  For example, an advertiser does *not* need "at least two adequate and well-controlled studies."  *Bracco,* 627 F.Supp. 2d at 471.  An advertiser does not even need to have tests that meet an "industry standard" to support an establishment claim.  *Castrol*, 987 F.2d at 945.  Rather, the plaintiff bears the burden of proving *why* an "imperfect" study design is not sufficiently reliable to support a claim with reasonable certainty.  *See Johnson & Johnson Vision Care,* 299 F.3d at 1248-49, n.6.  Whether a study meets this standard is "tied to whether the methods and findings of the cited study are

acceptable to the relevant scientific community." *Riddell*, 724 F. Supp. 2d at 972 (citing FTC case law as authority).

59.    "To ensure vigorous competition and to protect legitimate commercial speech, courts applying [the sufficiently reliable/reasonable certainty] standard should give advertisers a fair amount of leeway, at least in the absence of a clear intent to deceive or substantial consumer confusion." *Rhone-Poulenc Rorer Pharms.,* 93 F.3d at 515.  The question is *not* whether there are concerns about a study's design that "give reasons to doubt the results" of a study, but whether "the study was unreliable." *Riddell,* 724 F. Supp. 2d at 973.

### The FTC's Constitutionally Suspect Substantiation Program

60.    To avoid public and judicial scrutiny of its regulation of commercial speech, and in an effort to regulate *all* dietary supplement and weight-loss claims with a high substantiation standard akin to the standard that was held unlawful in *Pearson I* for the regulation of *all* health claims, the FTC has not engaged in rulemaking.  It has not adopted any substantive or procedural rule that would comport with the First and Fifth Amendments or the requirements of the FTC Act or APA.  Rather, it has invoked its "interpretive" powers under the FTC Act to regulate commercial speech through "guidelines" and then threatens/brings enforcement actions.

61.     The FTC has interpreted Sections 5 and 12 of the FTC Act as imposing on advertisers "two basic obligations: 1) advertising must be truthful and not misleading; and 2) before disseminating an ad, advertisers must have adequate substantiation for objective product claims."   Congress has defined what constitutes a "false advertisement," and the FTC has defined the elements of a claim for deceptive advertising.   As to the FTC's substantiation requirement, it is grounded on the notion that advertisers have to have a "reasonable basis" for making objective product claims—otherwise they are likely to deceive consumers. *See In re Pfizer, Inc.*, 81 F.T.C. 23 (1972) ("*Pfizer*"); FTC's *Policy Statement on Advertising Substantiation* appended to *In the Matter of Thompson Medical Co.*, 104 F.T.C. 648 (1984).

62.     Under the FTC's substantiation program there are two initial inquires. The FTC first determines whether the advertiser has *any* evidence to support a product claim.   If the advertiser has no evidence that the product works better than a "placebo," then the advertiser is subject to liability under a "falsity theory."   If the advertiser has some evidence, then the FTC considers the evidence pursuant to its guidelines (akin to the process undertaken by the FDA under its guidelines) against some substantiation standard to determine whether it "adequately substantiates" the product claim—the FTC's "reasonable basis" theory of liability. *See FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095-96 (9th Cir. 1994) ("*Pantron I*")

(discussing FTC's "falsity theory" and "reasonable basis" theories).   The FTC utilized its "interpretive" power to adopt this limitation on commercial speech.  *See FTC Policy Statement on Advertising Substantiation* appended to *In the Matter of Thompson Medical Co.*, 104 F.T.C. 648, 839 (1984).

63.   The FTC's interpretation of *Pfizer* as calling for "adequate substantiation" is *not* just semantics.  Rather, it was an effort by the FTC to explain and extend its authority to regulate commercial speech under its reasonable basis theory of liability.  A product claim, logically and under the First Amendment, either has, or does not have, a reasonable basis.  One would *not* ask *how much reasonable basis?*   However, by interpreting *Pfizer* as requiring "adequate substantiation," the FTC attempts to answer the question, *how much substantiation* must a product claim have to satisfy Sections 5 and 12 of the FTC Act?  This is precisely the type of question the FDA answered and the D.C. Circuit held unconstitutional in *Pearson I*.

64.   To establish liability under its "reasonable basis" theory, the FTC prefers and has implemented a process in its quasi-judicial administrative proceedings, and one it claims is applicable in Article III proceedings, whereby "the FTC must: (1) demonstrate 'what evidence would in fact establish such a claim in the relevant scientific community'; and (2) 'compare[] the advertisers' substantiation evidence to that required by the scientific community to see if the

claims have been established.'" *FTC v. Direct Marketing Concepts, Inc.,* 624 F.3d

1, 8 (1st Cir. 2010) (quoting *Removatron Intern. Corp. v. FTC*, 884 F.2d 1489,

1498 (1st Cir. 1989) ("*Removatron*") and citing *FTC v. Garvey,* 383 F.3d 891, 901

(9th Cir. 2004) ("*Garvey*")).

65.    For health related claims, including weight-loss benefits of a dietary

supplement, the FTC has adopted a "competent and reliable scientific evidence"

standard.    *See* FTC's November 30, 2000 denial of the Whitaker Petition

("'Competent and reliable scientific evidence' is the standard the Commission

requires for all claims relating to the safety or health benefits of a dietary

supplement."). Of course, the FTC has not used its notice-and-comment

rulemaking powers to promulgate any rule requiring "competent and reliable

scientific evidence" for any product claim; that defines "competent and reliable

scientific evidence"; that adopts any concrete, objective criteria for resolving

whether that standard has been satisfied; that provides any process for determining

prior to publication whether a claim is adequately substantiated; or that provides

any "safe harbor" for protected commercial speech from an enforcement action.

What constitutes "competent and reliable scientific evidence," and whether an

advertiser possesses evidence that meets this non-statutory/not-a-product-of-

rulemaking standard, is determined on a *post hoc*, case-by-case, product-and-claim

specific basis. *See Sterling Drug,* 741 F.2d at 1156; *Direct Marketing Concepts,*

581 F.Supp. 2d at 118 n.2 (agreeing with FTC and noting that the Supreme Court in *SEC v. Chenery Corp.,* 332 U.S. 194, 203 (1947) "has deemed acceptable the practice of giving content to a statutory standard by means of case-by-case adjudication, and has not required agencies to promulgate formal rules that lay out in advance all the acts or practices that would violate the statutory standards").

66.     While the FTC advocates for and proffers expert testimony in cases to support a "rigorous" or "relatively high level of substantiation" for weight-loss claims, such as one calling for two double-blind, placebo controlled, product-specific studies, federal courts have correctly held that this "gold standard" is not required under the FTC Act or under the FTC's interpretation of *Pfizer's* reasonable basis theory of liability, including under the FTC's competent and reliable scientific evidence standard. *See, e.g., Garvey,* 383 F.3d at 901-02 (not requiring product specific study to reasonably believe non-establishment claim was adequately substantiated); *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575 (3d Cir. 2010) ("*Lane Labs*") (affirming establishment claim on calcium supplement even though no product-specific study was performed, relying on expert testimony that it was reasonable to "extrapolate" data gathered from generic calcium trials published in peer-reviewed journals, and to conclude that those results were the "likely effect" of taking supplement); *FTC v. Garden of Life, Inc.,* 845 F.Supp. 2d 1328, 1337 (S.D. Fla. 2012) ("the Consent Decree does not require GOL to only

make representations that are supported by uncontroverted evidence; rather, the Consent Decree merely requires GOL to possess competent and reliable evidence that substantiates its claims").

67.     Moreover, while the FTC would like courts to ignore that the touchstone of liability under Sections 5 and 12 of the FTC Act remains whether an objective product claim is false or misleading, even under the FTC's interpretation of *Pfizer's* reasonable basis theory of liability, liability still remains tied to consumer perception, not any perceived need by the government to protect consumers from making what it considers poor decisions.  Therefore, just as under the Lanham Act, the nature of the subject product claim (whether qualified or unqualified, general or specific, or an establishment or non-establishment claim) remains relevant to the amount of substantiation a consumer would expect the advertiser to possess.

68.     Federal courts have continued to distinguish establishment from non-establishment claims (*e.g., National Urological Group,* 645 F.Supp. 2d at 1195), where less substantiation is necessary to adequately support a non-establishment claim (*e.g., QT, Inc*., 448 F.Supp. 2d at 959 (citing *Thompson Medical Co. v. FTC*, 791 F.2d 189, 194 (D.C. Cir. 1986)).

69.     Finally, just as under the Lanham Act, the FTC cannot prevail in an original enforcement action or in a contempt proceeding by simply criticizing the

probative value of competent and reliable scientific evidence that supports a product claim.  For example, in *Lane Labs*, the district court heard testimony from "dueling experts" proffered by the FTC and the defendants in a contempt proceeding for alleged violations of a stipulated final order for permanent injunction.  2010 WL 4226509, at *3.  "The FTC experts generally opined that the claims in question were not substantiated by competent or reliable scientific research; not surprisingly, experts for the Lane defendants contradicted this viewpoint." *Id.*  In denying the FTC's motion for contempt, the court found that "[a]ll four expert witnesses were credible and knowledgeable in their respective fields of expertise . . . ." *Id.*  While the FTC successfully appealed the denial of contempt where there was *no evidence* at all supporting a product claim, and where there were *no findings* in the record for the Court of Appeals to review, the Third Circuit did *not* reverse the district court's findings that the FTC failed to meet its burden of proof where there *was* credible evidence supporting a claim.  *See id.* at *5-11.

### The Final Judgment and Permanent Injunction Is a Prior Restraint on Protected Scientific Commercial Speech

70.    The FTC adopted its "reasonable basis" theory of liability in 1972, before the Supreme Court recognized that commercial speech was protected under the First Amendment.  *See Pfizer*, 81 F.T.C. at 62, 67 (holding that liability may attach to *truthful* claims that lacked "reasonable basis" when made because of

*potential* to mislead consumers—risk deemed *unfair* by FTC). By definition, the FTC's reasonable basis theory of liability regulates both protected and unprotected commercial speech. *See Pearson I*, 164 F.3d at 658 (rejecting argument that health claims supported by "credible evidence," but not "significant scientific agreement" among experts in relevant field, are "inherently misleading" and entitled to no protection as "almost frivolous"; such claims, at worse, are only "potentially misleading" and thus are entitled to some protection and, if properly qualified, are *fully* protected commercial speech).

71.    In 1984, the FTC extended the doctrine to subject more speech to coercive law enforcement action—where the FTC had the power to pick winners and losers. *See Advertising Substantiation Policy* appended to *Thompson Medical*, 104 F.T.C. 839 (FTC may bring enforcement action against *truthful* speech even if advertiser has *credible evidence* supporting claim; question is whether product claim has "adequate substantiation" after totality of factors and circumstances are considered). The FTC's preferred *ad* and *post hoc* approach to determining whether there is "adequate substantiation" in any give case compounds the restraint on protected commercial speech by deterring risk adverse advertisers from making valid product claims. *See Grayned v. City of Rockford*, 408 U.S. 104, 109, 92 S.Ct. 2294, 2299 (1972) ("where vague statute 'abuts . . . basic First Amendment freedoms, it 'operates to inhibit the exercise of those freedoms'" and "inevitably

lead[s] citizens to 'steer far and wider of the unlawful zone' than if the boundaries of the forbidden areas were clearly marked.") (citation omitted). The FTC's *ad* and *post hoc* approach is *irrational* because it *rewards* risk-tolerant speakers by *driving risk-adverse speakers from the market* and thereby *increasing the risk* of consumer deception.

72. There can be no real dispute that, broadly construed, the Final Judgment and Permanent Injunction is regulating protected commercial speech, as it requires the making of truthful and non-misleading claims that are supported by competent and reliable scientific evidence. If the objective product claim is truthful and not misleading, such as Galileo's claim that the world was round, the Final Judgment and Permanent Injunction would preclude Galileo from speaking because, at the time, his peers disagreed and he could not prove his theory.

73. The Final Judgment and Permanent Injunction is a prior restraint, which requires heighted judicial scrutiny and must be subject to greater safeguards.

### The Government Cannot Be the Arbiter of Protected Scientific Speech

74. The key to understanding the FTC's competent and reliable scientific evidence standard is that it means no more than what it says. It only requires that each challenged product claim be supported by evidence, including without limitation tests, analyses, research or studies, that: (i) is based on the expertise of professionals in the relevant area; (ii) is conducted and evaluated in an objective

manner by a person qualified to do so; (iii) uses procedures generally accepted in the profession to yield accurate and reliable results; and (iv) has a causal connection to the particular claim being challenged as interpreted by the Court.

75.    It has long been settled that if there is credible or otherwise sufficiently reliable scientific evidence supporting an advertised claim and reasonable minds could differ as to the evidence's probative value, the government may not declare a claim false. *See United States ex. rel. Haight v. Catholic Healthcare West,* 2007 WL 2330790, at *2 (D. Az. 2007) ("'Expressions of opinion, scientific judgment, or statements as to conclusions about which *reasonable minds may differ cannot be false.*'") (quoting *United States ex rel. Roby v. Boeing Co.,* 100 F.Supp. 2d 619, 625 (S.D. Ohio 2000)) (emphasis added). Contemporary standards of scientific evaluations are *not* "determinants of what is 'true' and what is 'false.'" *Pantron I*, 33 F.3d at 1099 ("Galileo's theories were contrary to then-contemporary scientific standards, but we treat as a given that these theories were as essentially 'true' when he explained them as they surely are today.").

76.    Moreover, the Supreme Court has held that the government cannot ban claims or impose liability on advertisers by being the arbitrator of credible differences of scientific judgment or opinion. In *American School of Magnetic Healing v. McAnnulty,* 187 U.S. 94, 104, 23 S.Ct. 33, 37 (1902), the Supreme

Court long ago questioned, "How can anyone lay down the limit and say beyond that there are fraud and false pretenses?"  It answered the question as follows:

> As the effectiveness of almost any particular method of treatment of disease is, to a more or less extent, a fruitful source of difference of opinion, *even though the great majority may be of one way of thinking, the efficacy of any special method is certainly not a matter for the decision of the Postmaster General within these statutes relative to fraud.*  Unless the question may be reduced to one of fact, as distinguished from mere opinion, we think these statutes cannot be invoked for the purposes of stopping the delivery of mail matter.

*Id.* at 105-06, 23 S.Ct. at 37-38 (emphasis added); *see Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,* 487 U.S. 781, 803, 108 S.Ct. 2667, 2681 (1988) (Scalia, J., concurring) ("It is axiomatic that, although fraudulent misrepresentation of facts can be regulated, . . . *the dissemination of ideas cannot be regulated to prevent it from being unfair or unreasonable*" – rejecting a premise of *Pfizer*) (emphasis added; internal citations omitted).

77.    In *Reilly v. Pinkus*, 338 U.S. 269, 70 S.Ct. 110 (1949), the Supreme Court reaffirmed that, while the government may regulate false or misleading claims, it may not be the arbiter of credible differences of scientific judgment or opinion:

> We do not understand or accept [*McAnnulty*] as prescribing an inexorable rule that automatically bars reliance of the fact-finding tribunal upon informed medical judgment every time medical witnesses can be produced *who blindly adhere to a curative technique thoroughly discredited by reliable scientific experiences*.  But we do accept the *McAnnulty* decision as a ***wholesome limitation upon findings of fraud under the mail statutes when the charges concern medical practices in fields where knowledge has not yet been crystallized in the crucible of experience*.**  For in the science of

medicine, as in other sciences, experimentation is the spur of progress. It would amount to a condemnation of new ideas without a trial to give the Postmaster General power to condemn new ideas as fraudulent solely because some cling to traditional opinions with unquestioning tenacity."

*Id.* at 273-74, 70 S.Ct. at 113 (emphasis added).

78.     In *United States v. Harkonen,* 2009 WL 1578712 (N.D. Ca. June 4, 2009), the district court considered *Reilly* and explained that it does *not* bar a trial to determine whether a health claim is false or misleading anytime "there is the least conflict of opinion as to curative effects of a remedy."  *Id.* at *7 (quoting *Reilly,* 338 U.S. at 273-74).  Rather, the government may prove that the proffered scientific evidence is not credible or sufficiently reliable or does not establish the claims being made.  *Id.*  However, the court recognized that the government may not criminalize, ban or hold an advertiser liable simply for promoting a drug with "scientific interpretation of data that would be accepted by the relevant health care community."  *Id.*

## *The FTC's Standard Is Necessarily Claim Specific*

79.     To avoid being declared unlawful as a prior restraint, the FTC's competent and reliable scientific evidence standard, which is used by the FTC to regulate commercial speech, does *not* require, up front, any level of substantiation beyond that which may be required by the First Amendment to constitute protected speech.  The FTC has made this clear in its industry guidelines.  Rather, through its case-by-case, product-and-claim specific adjudicatory process, the FTC attempts to

litigate and impose liability *after claims are already made* based on a level of substantiation the FTC contends and seeks to prove was needed to make the advertisement truthful and not misleading under the FTC's "reasonable basis" theory of liability.

80.    The backwards looking and product/claim specific analysis set up by the FTC's competent and reliable scientific evidence substantiation standard is critical to its alleged constitutionality.  As a matter of law, the FTC could not adopt, even for health claims, a broad standard that necessarily requires more substantiation than the D.C. Circuit in *Pearson I* found was permitted under the First Amendment for all such claims.  Rather, like the FDA, the FTC must permit an outlet for protected commercial speech, including properly qualified claims supported by at least credible evidence, free from coercive law enforcement action.

81.    In *Pearson I*, the D.C. Circuit held that the FDA may not use a high substantiation standard ("significant scientific agreement") to suppress speech through its pre-screening process.  The D.C. Circuit accepted the FDA's argument that "setting the standard extremely, perhaps even impossibly, high will surely prevent any confusion among consumers."  164 F.3d at 656.  The FDA's protocol also had the positive virtue of distinguishing for the advertiser, up front, what the FDA perceived as unprotected speech, so speakers knew precisely how to avoid prosecution.  *Id.*  However, the D.C. Circuit invalidated the FDA's one-size-fits-all

standard for health claims because, "when government chooses a policy of suppression over disclosure—at least where there is no showing that disclosure would not suffice to cure misleadingness—government disregards a 'far less restrictive' means." *Id.* at 658. The D.C. Circuit held that the First Amendment required the government to permit, and the FDA to provide, an outlet for protected commercial speech—which, in that case, meant health claims (a) supported by credible evidence and (b) properly qualified to avoid deception.

82. The FTC cannot meaningfully distinguish *Pearson I* as a case involving a prior restraint. The D.C. Circuit's concern was *not* with the FDA's pre-approval system. The D.C. Circuit recognized that it worked to "prevent any confusion among consumers." The D.C. Circuit's issue was that the standard suppressed too much speech. The government was engaged in an unconstitutional policy of suppressing what the agency subjectively perceived as potentially misleading speech instead of permitting the use of disclaimers or other qualifying language to avoid confusion. *Pearson I* prohibits the FTC from requiring a high level of substantiation from dietary supplement advertisers when it is not necessary to make truthful, non-misleading claims under the FTC Act. Suppressing truthful, non-misleading speech is not a substantial interest of the government. Driving risk-adverse advertisers from the market does not directly advance (but undermines) the government's interest in protecting consumers. After *Pearson I*, if

a health claim in product advertising (as opposed to product labeling) is at least supported by credible evidence, the FTC undoubtedly would have to meet the same standard the FDA had to meet to ban the claim.  If the FTC cannot meet that burden, the question is whether the advertiser properly qualified the claim to avoid consumer confusion.  Only if the advertiser made an unqualified claim might more substantiation be required of the advertiser.  Regardless, by definition, the FTC's substantiation standard for health-related claims does *not* require any fixed level of substantiation, such as two double-blind, placebo controlled studies.

### The Fifth Amendment Limitation

83.   The FTC's competent and reliable scientific evidence standard has withstood vagueness challenges—both "as applied" to a "fencing-in" provision, and in connection with a "facial challenge" when used as a broad standard of liability, as it is routinely used and was used in *National Urological Group*.  As mentioned above, the Georgia Court held that this standard does not fail "'to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits'"; nor does it "'authorize[] or even encourage[] arbitrary and discriminatory enforcement.'"  *National Urological Group*, 645 F. Supp. 2d at 1186 (citation omitted).

84.   The Georgia Court's rationale in *National Urological Group* to uphold the FTC's competent and reliable scientific evidence substantiation

standard makes sense provided the Court is applying the standard as defined by the FTC, not as preferred and subjectively applied by the FTC.  In fact, as mentioned above, the Georgia Court's rationale in upholding the standard—that the plain language of the FTC's substantiation standard is "clear" and not ambiguous but merely *context specific and permits different variations on "competent and reliable scientific evidence" depending on what pertinent professionals would require for the particular claim made*—is in accord with *Basic Research, LLC v. FTC,* 807 F.Supp. 2d 1078 (D. Utah 2012).

85.     The *Basic Research* court made clear that, after evidence is presented in a contempt proceeding, it is the Court, *not* the FTC or its experts, that determines whether that standard has been met with respect to the product claims before the Court.  Moreover, as discussed above, the FTC cannot meet its burden of proof by simply criticizing the probative value of competent and reliable scientific evidence.  *See* Exhibit "1" hereto (Transcript of Proceedings in *Basic Research, LLC v. FTC,* 807 F. Supp. 2d 1078 (D. Utah 2012)).

86.     Indeed, the FTC's delegated authority to regulate commercial speech, itself, is constitutional only because before any action under Sections 5 and 12 of the FTC Act has the force of law, it must: (a) survive the rigors of notice-and-comment rulemaking or the rigors of a real adjudicatory process, and (b) be subject to meaningful judicial review.  Where Congress has delegated legislative authority

to law enforcement, even to an elected official such as the President, without such fundamental protections of personal liberties, the Supreme Court has not hesitated in holding the delegation by Congress unconstitutional. *See A.L.A. Schechter Poultry Corp. v. U.S.*, 295 U.S. 495, 532-33, 55 S.Ct. 837, 844 (1935) (holding unconstitutional the Code of Fair Competition, former 15 U.S.C. §§ 700 *et seq.*, which delegated to the President power to approve and enforce "codes of fair competition" recommended by trade associations and industry leaders; and distinguishing the FTC Act, as there, Congress had prescribed specific requirements, administrative procedures, and judicial oversight of any legislative authority).

87.     While courts and elected officials may draw vague lines between protected and unprotected conduct ("due care" in malpractice cases) or speech ("obscenity" for complete bans on unsavory speech), and then receive testimony and permit the trier of fact to determine whether conduct or speech is protected against the backdrop of constitutional standards, it is unconstitutional for the government to subject **protected activity, particularly speech,** to the vagrancies of opinions of third parties, including professionals in the industry, at least without concrete, well-defined limits. For example, in *Women's Medical Center of Northwest Houston v. Bell*, 248 F.3d 411 (5th Cir. 2001), the Fifth Circuit struck down a regulation that required licensed abortion providers to provide "quality

care," defined as "[t]he degree to which care meets or exceeds the expectations set by the patient." *Id.* at 421-22.   The regulation was unconstitutionally vague because it subjected physicians that exercised "due care" to sanctions based on the subjective expectations of a patient. *Id.* at 422.   Similarly, in *Bella Lewitzky Dance Foundation v. National Endowment for the Arts*, 754 F.Supp. 774, 781-83 (C.D. Cal. 1991), the district court struck down as unconstitutional a program that relied upon third parties to determine what constituted protected speech without any concrete definition.

88.   Although the Georgia Court in *National Urological Group* held that the FTC has provided sufficient guidance to provide advertisers of ordinary intelligence a reasonable opportunity to understand what the FTC may require to substantiate objective product claims, the FTC has continuously tried to avoid limits on the exercise of its power to find advertisers liable for not having a "reasonable basis" for making a claim.   It has done so by denying that competent and reliable scientific evidence has any fixed meaning as it relates to future product claims, but rather that standard is part of a process for determining on a case-by-case, product-and-claim specific basis whether a challenged claim is false or misleading *after* it has been made.   Therefore, the FTC cannot be heard to claim that its standard of liability, as included in the Final Judgment and Permanent Injunction, has any fixed meaning for *future* product claims based on any prior

adjudication of *past* products or claims based on the evidence then presented to the Court in opposing, and only opposing, liability under the FTC Act for those *past* product claims.

89.     Moreover, any testimony in the abstract as to future product claims, would not only go beyond the issue actually being litigated and necessary to a finding of liability under the FTC Act, but also be incompetent as a legal opinion that is directly contrary to the rule of law being advanced by the FTC in case after case concerning its substantiation standard for weight-loss claims.  It would and could have no force or effect in any future proceeding regarding any new products or claims challenged under the FTC Act even in the same case.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment –28 U.S.C. §§ 2201, *et seq.*)

90.     Hi-Tech incorporates and re-alleges the allegations contained in all prior paragraphs of this Complaint as if set forth at length herein.

91.     An actual and justiciable controversy has arisen concerning the Final Judgment and Permanent Injunction issued by the Georgia Court—one that extends beyond the action *Federal Trade Commission v. National Urological Group, Inc.*, Case No. 1:04-CV-3294-CAP.

92.     Through an application of collateral estoppel, the FTC has attempted to alter the substantiation standard defined in the Final Judgment and Permanent

Injunction, and avail itself of this alteration.  Rather than enforce the plain and unambiguous meaning of the substantiation standard actually in the Final Judgment and Permanent Injunction, the FTC has reached outside the four corners of that document and replaced the standard defined therein with a preordained level of substantiation necessary to allegedly substantiate a product claim— regardless of the type of covered product or service at issue or the nature of a product claim Plaintiff may make and subject to prosecution under the Final Judgment and Permanent Injunction, and without consideration of any evidence that does not meet the preordained level of substantiation.

93.    The Final Judgment and Permanent Injunction is not subject to the FTC's newly proffered definition.  Its terms are clear and unambiguous and do not permit the requirement of a fixed or preordained amount of substantiation for any product claim.

94.    Moreover, the FTC is estopped from taking the position that the substantiation standard included in the Final Judgment and Permanent Injunction establishes a specific type or level of substantiation to make a product claim.  Each of the elements of judicial estoppel, quasi-estoppel, equitable estoppel and collateral estoppel apply to bar the FTC from taking the position that the substantiation standard in the Final Judgment and Permanent Injunction does not mean what it says, what it has been interpreted by the FTC to mean in court

documents and regulatory guidelines, and what federal courts have held that it means in litigation involving the FTC.

95.     The FTC disagrees with Plaintiff's understanding of the Final Judgment and Permanent Injunction, and has threatened and brought litigation to suppress Plaintiff's commercial speech, including speech that the FTC does not claim is false or misleading.   Accordingly, Plaintiff prays for the declaratory judgment asserted herein, as well as all ancillary relief necessary and appropriate to effectual the declaratory judgment.

96.     Absent immediate declaratory relief, Plaintiff will suffer irreparable harm to its business.   Irrespective of the future outcome of *Federal Trade Commission v. National Urological Group, Inc.*, Case No. 1:04-CV-3294-CAP, Plaintiff is on the horns a dilemma as previously described herein and faces a Hobson's choice.   It can either put itself out of business, at least for a period of time while it incurs the potentially ruinous expense in trying to comply with the FTC's demands, or risk further criminal or civil prosecution for contempt on product claims that the FTC does not even claim are false or misleading.

## PRAYER FOR RELIEF

WHEREFORE, Hi-Tech respectfully requests that this Court:

(a)     Declare that the plain language used in the Final Judgment and Permanent Injunction to define "competent and reliable scientific

evidence" has no fixed or preordained meaning, such as two double blind, placebo controlled product specific studies.   Rather, the substantiation standard in the Final Judgment and Permanent Injunction may result in many different meanings depending on:  (i) the covered product or service being advertised; (ii) the nature of the claim being challenged by the FTC and reviewed by the Court; and (iii) the evidence presented as substantiation for the challenged product claim;

(b)      Declare that the clear and unambiguous elements of the substantiation standard in the Final Judgment and Permanent Injunction are satisfied if the challenged product claim, when made, is supported by evidence, including without limitation tests, analysis, research or studies, that: (i) is based on the expertise of professionals in the relevant area; (ii) is conducted and evaluated in an objective manner by a person qualified to do so; (iii) uses procedures generally accepted in the profession to yield accurate and reliable results; and (iv) has a causal connection to the particular claim being challenged as interpreted by the Court;

(c)      Declare that the plain language of the substantiation standard in the Final Judgment and Permanent Injunction means what it says, what the FTC has stated these terms mean in its regulatory guidelines and

in opposition to constitutional challenges under the First and Fifth Amendments and statutory challenges under the FTC Act and APA, and what federal courts, including the Georgia Court, have held they mean in adjudications involving the FTC;

(d)     Declare that in any action to enforce the Final Judgment and Permanent Injunction the FTC is legally bound by the plain language it proposed and used to define "competent and reliable scientific evidence" and is estopped under one or more of the doctrines asserted in this Action from:  (i) denying the plain language and meaning of the substantiation standard in the Final Judgment and Permanent Injunction; and (ii) asserting a preordained meaning for any product claim challenged under the Final Judgment and Permanent Injunction;

(e)     Declare that any judgment, order, sanction or penalty in an action to enforce the Final Judgment and Permanent Injunction based on a different standard or an additional requirement or some other construction of "competent and reliable scientific evidence" is void *ab initio*; and

(f)     Declare that the FTC has acted arbitrarily, capriciously and contrary to law and/or has abused its discretion by taking the position it has taken under the Final Judgment and Permanent Injunction.

(f)     Award Hi-Tech its costs;

(g)     Award Hi-Tech its attorneys' fees; and

(h)     Award Hi-Tech such other and further relief which the Court deems just and proper.

Respectfully submitted,


/s/ Jack Wenik
Jack Wenik (D.C. Bar No. 406362)
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102
(973) 643-5268

*Counsel for Plaintiff*
*Hi-Tech Pharmaceuticals, Inc.*

Of Counsel

Arthur W. Leach
Georgia Bar No. 442025
5780 Windward Pkwy, Suite 225
Alpharetta, Georgia 30005
Telephone: (404) 786-6443
Email: art@arthurwleach.com

# Exhibit 1

1          IN THE UNITED STATES DISTRICT COURT

2                    DISTRICT OF UTAH

3                    CENTRAL DIVISION

4

5   BASIC RESEARCH, LLC, et al.,  )

6            Plaintiffs,          )

7     vs.                         )  Case No. 2:09-CV-779 CW

8   FEDERAL TRADE COMMISSION and  )

9   THE UNITED STATES OF AMERICA, )

10            Defendants.          )

11   _____)

12

13        BEFORE THE HONORABLE CLARK WADDOUPS

14        ------------------------------------

15                   May 31, 2012

16      Plaintiffs' Motion for Partial Summary Judgment

17

18

19

20

21

22

23

24  REPORTED BY: Patti Walker, CSR, RPR, CP

25  350 South Main Street, #146, Salt Lake City, Utah  84101

1                        A P P E A R A N C E S

2

3

4    For Plaintiff:              Richard Burbidge
                                 BURBIDGE MITCHELL & GROSS
5                                215 South State Street, #920
                                 Salt Lake City, Utah  84111
6

7

     For Defendant:              Drake Cutini
8                                U.S. DEPARTMENT OF JUSTICE
                                 OFFICE OF CONSUMER LITIGATION
9                                P.O. Box 386
                                 Washington, D.C.  20044
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        SALT LAKE CITY, UTAH; THURSDAY, MAY 31, 2012; 3:30 P.M.

2                              PROCEEDINGS

3            THE COURT:  Good afternoon.  We're here in the

4    matter of Basic Research vs. the FTC, case 2:09-CV-779 and

5    consolidated with 2:09-CV-972.

6            Will counsel please state their appearance.

7            MR. BURBIDGE:  Good afternoon, Your Honor, Richard

8    Burbidge.  We represent the plaintiffs and the moving party.

9            MR. CUTINI:  Good afternoon, Your Honor, Drake

10   Cutini from the Justice Department on behalf of the United

11   States and the Federal Trade Commission.

12           THE COURT:  Thank you.

13           We are here on the plaintiffs' motion for partial

14   summary judgment on their first claim for relief.  I have

15   reviewed the parties' submissions and reviewed carefully the

16   supporting materials.  Let me tell you what I'm inclined --

17   see if the system is on.  Let me tell you what I'm inclined

18   to do and then give you an opportunity to tell me why you

19   think that approach is misdirected or correct.

20           Based on the proposed suggestions of the motion

21   for partial summary judgment, my inclination is to rule as

22   follows:  One, with respect to whether it is characterized

23   as a contract, an agreement containing a consent order, or a

24   decision and order, my inclination is to conclude that the

25   FTC is bound by that order and document, and that the

1   document and the order may only be enforced in accordance

2   with the terms of that order.

3          Second, that the reasonable basis standard as set

4   forth in the decision and order is clear and unambiguous.

5          Three, that the FTC is bound by that standard as

6   set forth in the decision and order and cannot add

7   requirements.

8          Four, that the reasonable basis as required by the

9   decision and order is that by clear and convincing -- or,

10   excuse me, by -- if the language is clear and unambiguous

11   requiring the following:  A, once Basic Research proffers a

12   basis that it contends meets the requirements of the order,

13   the burden shifts to the FTC to prove otherwise; B, Basic

14   Research must, at the time that a representation is made,

15   have a reasonable basis that is a causal -- that there is a

16   causal connection between the representation that is made

17   and the basis that it submits to support that

18   representation.  And by that I mean that suppose you

19   submitted a study that had no causal connection in any way

20   with the representation that would fail, but as long as that

21   causal connection is met, this part would be -- element

22   would be satisfied.

23          If there is a causal connection between the basis

24   presented and the representation, the requirement for a

25   reasonable basis is met if there is competent and reliable

1    scientific evidence as defined by the order.  As I interpret

2    the decision and order, the requirement for the reliable and

3    competent evidence is satisfied as follows:  One, evidence

4    is presented which includes, without limitation, tests,

5    analyses, research and studies.  And I say it that way

6    specifically to mean that I find that there is not a finding

7    in the order that there must be a single test or a single

8    analysis.  That is not determinative as to -- the fact that

9    there is a plural statement in the order doesn't mean that

10   there must be plural tests.  In other words, when it says or

11   other evidence, I find that to be giving the prior

12   statements as examples of the kind of evidence that may meet

13   that requirement.

14          Now in order for the evidence to satisfy the

15   requirement, it must have the following characteristics,

16   which are set forth in the ruling -- in the decision.  A,

17   the evidence must be based upon the expertise of

18   professionals in the relevant area; B, the evidence must

19   have been conducted and evaluated in an objective matter; C,

20   the analysis or test or evidence that's presented must have

21   been completed by a person who was qualified to do so; and,

22   D, the person doing that must have used procedures that are

23   generally accepted in the profession, tested by the standard

24   that they are viewed in the profession as yielding accurate

25   and reliable results.

1      Measured against these requirements, I would add

2 the following:  To prove that Basic Research did not have a

3 reasonable basis, the FTC must show evidence that the

4 evidence proffered by Basic Research to support its

5 representation failed to meet one or more of the

6 requirements that I have just listed.  In other words, if

7 the FTC comes forward with an expert who disagrees with the

8 conclusion that is supported by the evidence offered by

9 Basic Research, that is not sufficient to meet its burden.

10 It must come back and show either through independent

11 analysis or that the study it presents supports the

12 conclusion, for example, that the person who made the

13 analysis for Basic Research did not have the expertise of a

14 professional in the relevant area, or that the person did

15 not conduct the analysis or study in an objective manner, or

16 that the person was not otherwise qualified to do that, or,

17 finally, that these procedures were not accepted in the

18 industry.

19      Now that burden could be met by a study by an

20 expert that reaches a different conclusion but only if that

21 study would show that the evidence proffered by Basic

22 Research failed in one of these specific areas.

23      Now that's how I'm inclined to rule.  In light of

24 that, I would be happy to hear argument as to where you

25 think that there is error in that analysis or otherwise have

1  missed something that should have been considered in the

2  approach.

3        MR. BURBIDGE:  If I could just briefly, I was

4  obviously taking furious notes, and I think Your Honor

5  captured an appropriate analysis.  The only thing that I

6  will underscore, and I think Your Honor covered it, is that

7  the agreement provided for a reasonable basis standard,

8  which is a threshold standard.  And certainly we have to

9  meet each one of those elements, and that's the area of

10  factual aggression, discussion, proof.  But, again, just

11  underscoring, it's a threshold.  And the one thing that our

12  standard did not require is you must prove, you must

13  demonstrate a reasonable basis in all of those things.

14        The only other footnote is that the government's

15  burden in this context is clear and convincing evidence, and

16  I think Your Honor covered that, but I just wanted to make

17  sure.  Thank you.

18        THE COURT:  Let me make clear.  What I attempted

19  to articulate I think is consistent with what you have just

20  stated.  I believe that once Basic Research offers a basis,

21  in order for the FTC to challenge that basis, the burden is

22  then on the FTC to come back and show that it fails in one

23  of the specific requirements that I have articulated.

24        The only issue that I have not clearly decided --

25  I know that there is case law that says it must be by clear

1   and convincing evidence.  I am still open, if the government

2   wants to prove that some lesser standard would satisfy it.

3   But that is the case law that I have seen, although that was

4   a district court opinion out of -- I'll tell you where it

5   was from -- the Southern District of Florida.  Now there may

6   be other authority.  I haven't researched that issue

7   carefully enough to reach a conclusion that there may not be

8   room to argue that under some circumstances there may be a

9   different standard.  But my inclination is, based on my

10  research, to believe that it is a clear and convincing

11  evidence standard.

12          MR. BURBIDGE:  We can brief it more fully for Your

13  Honor at any time, at any juncture.  The reason we didn't is

14  because there didn't appear to be any dispute between the

15  two parties.

16          THE COURT:  If there's not a dispute, that's fine.

17          MR. BURBIDGE:  Thank you, Your Honor.

18          THE COURT:  Mr. Cutini.

19          MR. CUTINI:  Your Honor, Drake Cutini on behalf of

20  the Federal Trade Commission and the United States.

21          With respect to the clear and convincing standard,

22  I will start with that first.  I didn't do research on that.

23  That is going to be irrelevant in the case the United States

24  has brought against Basic Research and others.  I believe

25  the standard is a preponderance of the evidence.  But since

1   I haven't researched that, I think it would be appropriate

2   to take that up at a later time when the United States

3   summary judgment motion is examined in the affirmative case

4   against Basic Research and others.

5           THE COURT:  Let me give you the reference to the

6   Florida case that reaches that conclusion.  It is Federal

7   Trade Commission vs. Garden of Life, Inc. and Jordan S.

8   Rubin.  The decision is dated February 27, 2012.  It's

9   United States District Court for the Southern District of

10  Florida.  Case number 06-80226.  So that's the case I was

11  relying upon.

12          MR. CUTINI:  That's the case that Basic Research

13  submitted to this Court a week or so ago.  That case is

14  currently on appeal.  I thought I would inform the Court of

15  that.

16          But again, I believe the proper standard is, in

17  most of the cases, preponderance.  But I think, again,

18  that's an issue we can take up in analyzing the United

19  States summary judgment motion.

20          I think, for the most part, what the Court stated

21  is consistent with what the government believes in this

22  case.  The order is controlling here, and the standard

23  that's articulated in the order is clear and unambiguous.

24  Neither party can add requirements to the order.  And the

25  Court articulated, I think, the standard that's in the

1    order, that Basic Research and the other defendants must

2    have a reasonable basis and that shall be competent and

3    reliable scientific evidence.

4            I am understanding by the Court's articulation

5    that it's not going to adopt their declaration, which we

6    think adds to and alters the clear and unambiguous language

7    of the order, specifically part D, they say one or more

8    tests or -- they are kind of ambiguous on which claims need

9    to be supported.  That alters the order.  We think that's

10   not appropriate.

11           THE COURT:  How do you think that alters the

12   order?

13           MR. CUTINI:  It's not specific on which claim they

14   are talking about.  At the least, that portion of their

15   suggested declaration adds ambiguity to an order that's

16   clear and unambiguous.  The other portion they seek to --

17           THE COURT:  Do you take the position that more

18   than one test is required?

19           MR. CUTINI:  No, not that more than one test is

20   required, but that language is not in the order.

21           THE COURT:  What I'm trying to understand -- I

22   understand that language is not in the order.  What I'm

23   trying to understand is what difference do you think it

24   makes?

25           MR. CUTINI:  They assert that's a substantive

1   change.  At page 3 of their reply brief in the summary

2   judgment, they assert that's a substantive change that they

3   are seeking to make to the agreed upon order that was issued

4   by the Federal Trade Commission.

5          THE COURT:  Well, I understood their argument to

6   be that they were simply making the point that they weren't

7   required to have more than one test.

8          MR. CUTINI:  That seems to be why they want that

9   language included in there.

10         THE COURT:  So does the FTC take the position that

11  they are required to have more than one test?

12         MR. CUTINI:  No.  In most cases, more than one

13  would be required.  But they seem to take the position, and

14  I think that's why they want that in there, if you look at

15  their complaint, paragraph 114, paragraph 125, one study

16  standing alone is sufficient.  We cite a number of other

17  paragraphs in their complaint where they say very similar

18  things, that one --

19         THE COURT:  Do you concede that one study may be

20  sufficient?

21         MR. CUTINI:  If it's consistent with the rest of

22  the clear and unambiguous standard, then it may be

23  sufficient.

24         THE COURT:  I think that's exactly what they

25  argued.

1    MR. CUTINI:  That's not exactly what the argued.

2 They seemed to --

3    THE COURT:  Let me ask Mr. Burbidge because I

4 don't understand the distinction you are making.

5    MR. BURBIDGE:  I guess I didn't understand the

6 distinction.  May I put up before the Court the declaration

7 we were seeking?  I thought it was absolutely consistent

8 with what the Court had said.

9    The Court made a clarifying statement that I

10 thought helped because the Court looked at the term other

11 evidence and thought that that made clear that it is one or

12 more.  It could be a test, an analysis, research, study, or

13 any other evidence.  It's a broad term and you can't -- you

14 don't have to have any one or more.  You could have, for

15 example, someone who's qualified come in with an analysis of

16 the information out there, scientific information providing

17 a reasonable -- a competent and reliable scientific basis.

18    In that instance, it would not be sufficient for

19 the government to come in and say, nope, you can't do an

20 analysis.  You have to have two double-blind,

21 placebo-controlled studies.

22    THE COURT:  My attempt and the way I attempted to

23 carefully phrase it is that I think that clearly provides

24 that you must have evidence and that evidence can be,

25 without limitation, tests, analyses, research or studies.

1    But whatever evidence that's presented must meet the other

2    requirements that are listed.

3              Did you understand that differently, Mr. Cutini?

4              MR. CUTINI:  No, that's the way I understand it.

5    But their language --

6              THE COURT:  I'm not arguing over their language

7    because I'm not adopting their language.

8              MR. CUTINI:  Okay.  That's the point I was trying

9    to make, their language should not be adopted.

10             But it did seem to me that in part of what the

11   Court stated, you were adopting a point that they make on

12   page 7 and 8 of their reply.  What they say there is that

13   once they come forward with what they allege to be an

14   analysis or a study or a test of someone they claim is a

15   qualified expert, that's pretty much the end of it.

16             THE COURT:  Then the burden shifts to the FTC.

17   That's exactly what I intended to indicate.

18             MR. CUTINI:  In the United States case against

19   Basic Research, the burden is on the plaintiff, the United

20   States, to begin with, which we think has been carried

21   already by the summary judgment motion that has been filed,

22   that was filed last week I believe.  So in that case, the

23   burden initially was on the United States.  It's been met.

24   Now it's their burden to try to overcome that.

25             THE COURT:  Well, that's not how I would interpret

1  the way the procedure works.  Let me tell you, the burden

2  is, on a motion for summary judgment, to come forward, for

3  you to show that there are no disputed facts.  And if you

4  proffer undisputed facts sufficient to meet your burden to

5  show that they cannot meet this requirement, then you may

6  get partial -- you may get summary judgment on that issue.

7          MR. CUTINI:  Excuse me, Your Honor.  I thought you

8  were talking about the burden in the affirmative case the

9  United States has brought against them.  You are talking

10  about the burden on the summary judgment motion and we think

11  that we have met that burden.  We do not think there are

12  facts in dispute on this summary judgment motion.  We

13  believe that they cannot get their requested relief as a

14  matter of law.  Primarily for the reasons we have just been

15  discussing, we think that they want to change the term --

16  the explicit terms that they agreed upon that are part of

17  the order and they say -- again, this is in their reply

18  brief at page 3, they concede, and I'm quoting, the only

19  substantive change made by plaintiffs in their proposed

20  declaration is inclusion in the first clause of the phrase

21  any one or more of the following.

22          THE COURT:  Well, we've already resolved that

23  issue.

24          MR. CUTINI:  Okay.  But we think we have met the

25  burden.  In this case, it's a question of law whether they

1   are entitled to --

2           THE COURT:   Why are we arguing about that today?

3           MR. CUTINI:   Well, the Court indicated that the

4   burden was on us now to explain why they don't get summary

5   judgment.

6           THE COURT:   No.  No.  No.  We're not talking about

7   summary judgment today.   We're talking about partial summary

8   judgment as to this specific declaration.

9           MR. CUTINI:   Okay.  That's what I meant, Your

10  Honor, why they don't get the summary judgment motion that

11  they filed with respect to their first claim.   Their first

12  claim for relief, the claim itself alleges that the United

13  States -- it alleges that the Federal Trade Commission is

14  seeking to impose burdens on them greater than the clear and

15  unambiguous language of this order.

16          Now in the complaint that the United States has

17  filed against them and in the summary judgment motion filed

18  last week, the United States and the FTC did not do that.

19  It's clear that that's not happening.   Summary judgment

20  cannot be granted on their first claim in its entirety

21  because that's what it says and the United States has not

22  done that.   The United States has clearly met its burden

23  with respect to their overall claim.

24          THE COURT:   Well, let me be more specific.   As I

25  articulated in my indicated ruling, do you have an objection

1    to that?

2         MR. CUTINI:  No, not for the most part, except

3    for --

4         THE COURT:  Well, I want to get to the most part.

5         MR. CUTINI:  Okay.

6         THE COURT:  To the part that you do object to,

7    tell me what you think is in error.

8         MR. CUTINI:  Okay.  We think that -- what the

9    Court was discussing about the burden was -- as I understood

10   it, the burden -- when they come forward with an expert in a

11   declaration or a study or something, the United States can

12   meet that burden by a different study or something like

13   that.  That's the burden and the level of proof in the

14   United States' affirmative case against them.  That really

15   has nothing to do with the first claim for relief.  That's

16   not relevant to the summary judgment motion that's before us

17   today.  That only seeks relief on the first claim.  And the

18   only allegation in the first claim is that the United States

19   is trying to impose a burden on them greater than the order.

20   That's the only issue in that --

21        THE COURT:  Do you disagree that under the order

22   the FTC has the burden of proof?

23        MR. CUTINI:  In the affirmative case against them

24   or in this summary judgment on the motion today?

25        THE COURT:  Well, the motion today was to ask the

1   Court to make a declaration as to what the requirements were

2   under the decision and order.  My intended ruling is that

3   under the decision and order, the FTC has the burden of

4   disproving the basis that Basic Research provides to support

5   its representation.  You disagree with that?

6          MR. CUTINI:  Yes.  Under the order, the burden is

7   initially on the Federal Trade Commission to establish that

8   they do not have a reasonable basis for their claims, they

9   don't have competent and reliable scientific evidence.

10          THE COURT:  To meet that burden you must show that

11   whatever they proffer fails to meet one of the specific

12   elements set forth in D, as they've placed it on the board.

13          MR. CUTINI:  No, Your Honor.  The United States

14   can meet that burden by its own expert, which it has done.

15          THE COURT:  But that expert -- that expert must

16   come forward to show that what Basic Research has proffered

17   fails in one of these requirements.  If you come up with an

18   expert that disagrees, that doesn't meet your burden.

19          MR. CUTINI:  Yes, that expert has to show that

20   they did not have -- whatever they had was competent and

21   reliable scientific evidence that formed a reasonable basis.

22          THE COURT:  As defined by the order.

23          MR. CUTINI:  Correct, as defined by the order.  So

24   the burden initially is on the United States to show that

25   they did not have a reasonable basis as defined by the

1    order.  And then I think it's a preponderance.  But again,

2    that's another issue.  They must try to overcome that

3    burden.  I think in the litigation, the burden is on the

4    United States.  We think there's no need to articulate that

5    that type of procedure in response to their summary judgment

6    motion today, which only seeks --

7              THE COURT:  Why would I not articulate it if you

8    agree that that's the law?

9              MR. CUTINI:  Because that wasn't in their first

10   claim, it's not part of their declaration they seek, and

11   that's established case law.

12             THE COURT:  But why would we quibble about that if

13   you agree that that's the correct standard?

14             MR. CUTINI:  We agree the correct standard is the

15   United States has the burden which it must meet to show they

16   did not have competent and reliable scientific evidence.

17   That's what we agree upon.

18             THE COURT:  What is it that you don't agree with?

19             MR. CUTINI:  Well, I thought what the Court was

20   saying was that they had the burden first and then the

21   United States had the burden, which it seems to me that's

22   not the way the burden shifts.  But it also seems to me

23   there is no real reason to do that in the context of this

24   motion.  I understand what the Court is saying about

25   establishing that at this point in this case.  But, number

1    one, that wasn't something they sought in their first claim.

2    It's not something they sought in their declaration.  It's

3    something that is established by abundant case law.  And,

4    you know --

5         THE COURT:  You agree it's correct, but you think

6    that I shouldn't rule because they haven't asked me to rule?

7         MR. CUTINI:  Correct, either in the complaint or

8    in their summary judgment motion.  They just haven't asked

9    for it.

10        THE COURT:  I understand your position.  Any other

11   problems you have with what I articulated as my intended

12   ruling?

13        MR. CUTINI:  I would just like to point out, Your

14   Honor, that the competent and reliable scientific evidence

15   standard is not -- they have stated that they have made

16   significant consideration for that and they shouldn't have

17   to do anything else.  That standard is not unique to them.

18   That specific language has been litigated in many, many

19   cases.  It was articulated in advertising guidelines

20   published by the Federal Trade Commission in 2001.

21        THE COURT:  Again, I don't understand what

22   difference that makes.  What's the FTC's point that you are

23   trying to make?

24        MR. CUTINI:  The point is that litigation about

25   what meets the standard whether experts are necessary has

1    happened in many cases and it's well established.  We

2    believe that there is no need for the Court to articulate a

3    special rule in this case on burden of proof when that was

4    not either requested in the complaint or the summary

5    judgment motion.

6                THE COURT:  Anything else?

7                MR. CUTINI:  No, Your Honor.

8                THE COURT:  Mr. Burbidge, anything?

9                MR. BURBIDGE:  Just very briefly, Your Honor.

10               I understood everything the Court said.  I

11   understood everything the Court said when I got up and asked

12   questions and asked for clarification.  The only time I

13   didn't understand what happened is when counsel stood up and

14   now I got lost.

15               We asked the Court for a declaration.  As I

16   understand it, the Court has granted partial summary

17   judgment, but in its own terms, as you've articulated it.

18   You have made a clarification of what we've asked for.  This

19   is the rule of the road.  All Your Honor has said is for you

20   to advertise, Basic Research, you have to meet the standard

21   that I've articulated, which is in your agreement with the

22   FTC, not more, not less, and they can't change it.

23               Now the FTC, depending on their burden of proof,

24   they have to come in and they have to show you didn't meet

25   one of these elements, not we've got more experts, not we've

1   got 10 compurgators, not we've got 50.  The question is did

2   you have a reasonable basis in that you had one or more of

3   the following done in the manner that Your Honor set forth,

4   which is what we've asked for.

5          Counsel keeps jumping ahead to their motion for

6   summary judgment.  I'm not prepared to argue that.  I will

7   tell you, Your Honor, that it tries to turn -- and maybe

8   this is Mr. Cutini's source of confusion.  If I may?

9          THE COURT:  You may.

10          MR. BURBIDGE:  I don't know why I had a

11   premonition that we were going to get into this somehow.  I

12   didn't think it was appropriate, but Mr. Cutini has brought

13   it up.

14          Here's what he's saying, despite the fact that

15   we've got a contract, which says just the opposite, what is

16   necessary for summary judgment to be granted to the

17   government in a case such as this is that there be a basis

18   for the Court to find that the weight loss claims are not

19   supported by competent and reliable scientific evidence.

20   Such basis may be provided by the declaration or affidavit

21   of a person who possesses requisite scientific expertise to

22   render an opinion on the sufficiency of the purported

23   evidence.  They haven't read Rule 56 lately.  No, the

24   government, when it makes a motion for summary judgment, has

25   to do exactly what the Court just told them it has to do, it

1  has to exclude the possibility that on a factual basis we

2  have met the elements of the Court's order, of the Court's

3  grant of our partial summary judgment.

4      Moreover, they take the contract and twist it on

5  its head.  Our reasonable basis is a threshold showing.  You

6  don't have to prove your claims.  You don't have to have all

7  of the masters of the universe say, yes, we think it's true.

8  You don't have to show it's absolutely by a preponderance,

9  by clear and convincing.  What you have to have is a

10  reasonable basis, as Your Honor has articulated, and you're

11  going to have to show you've met each one of these elements.

12  We will.  We'll do that by a showing.

13      The government's turning this on its head and

14  saying, no, all we have to do is come in with an expert that

15  disagrees and they're dead.  Remember, when the FTC shoots

16  you with one of these cases, it's a death ray.  When counsel

17  talks about all the cases, all the precedent, we've read

18  them all.  Not every time, but most of the time you are

19  looking at a defendant that's a corpse.  It doesn't exist

20  anymore, because once the FTC shoots you, all the class

21  actions, automatic filings come out and you are litigating

22  around the country, if not the world.

23      They are saying all we have to do is come in,

24  bring an affidavit and you're dead, and what an affidavit.

25  Here's what he says.  You won't find this anywhere in your

1    order.  You won't find it in our contract.  You won't find

2    it anywhere.  Here's Mr. Blonz.  Now Mr. Blonz is a

3    pharmacologist.  Congratulations.  A Ph.D.  Not the only one

4    there, but maybe tens of thousands, maybe hundreds of

5    thousands.  I'm not belittling anything he stands for.  But

6    they got him to say, the ideal for support in scientific

7    research is a clinically significant finding in a randomized

8    double-blind, placebo-controlled, clinical study, with these

9    results being published in a peer-reviewed scientific

10   journal.  Findings should be confirmed by additional

11   investigations at independent research institutions.  You

12   won't find that in our contract.

13          But this is what happens when the FTC gets two

14   inches.  That's why we were so careful to come here and say,

15   please tell us what the rules are.  You've done that, and

16   this won't apply under that ruling because what this

17   gentleman has to do is not rhapsodize about what he would

18   like in the abstract if he were king of the world.  What

19   he's got to do is take our showing and demonstrate we didn't

20   meet those elements by whatever burden they had.  I didn't

21   want to get into this, but counsel has.

22          Your Honor, I think your order is clear.  I don't

23   think that -- I mean we could sit here all day and I think

24   the FTC would still not be happy with it because what

25   happens in a contract, good and bad, we tried to distribute

1   the risks and predict the future.  And the FTC lost some

2   control, some power.  They got three million in

3   consideration and they got performance by our client, but

4   they don't get to rule anymore because this contract is not

5   determined by the FTC.  It's determined by Your Honor.

6         This is the ballpark we want to play in.  This is

7   where we want to be.  We have been the other route where the

8   FTC, they are the prosecutor, they are the judge, they are

9   the appellate court.  We didn't like that.  We're here.

10  We're going to abide by Your Honor's orders.  We think they

11  are clear and understandable.

12        THE COURT:  Mr. Cutini, anything further you want

13  to say?

14        MR. CUTINI:  Yes, Your Honor.

15        Plaintiffs' counsel stated that they are required

16  under the order to simply make a threshold showing.  I

17  believe he said that they don't have to prove that they have

18  competent and reliable scientific evidence.  My

19  understanding is that's consistent with what they have said

20  in their papers that they --

21        THE COURT:  They don't have to prove anything

22  until you come forward with something to show that what they

23  have offered is not what they say it is.

24        MR. CUTINI:  That's correct.  But then to counter

25  that, they would have to prove that they have or had

1 competent and reliable evidence.

2      THE COURT:  If what you proffer is sufficient to

3 show that it doesn't constitute competent and reliable

4 evidence under the order.

5      MR. CUTINI:  Correct.  What we've proffered is

6 this expert's opinion, and plaintiffs' counsel indicated

7 that he simply disagrees, but he disagrees that they have

8 competent and reliable scientific evidence as required under

9 the explicit terms of the order.  They have to have such

10 evidence when they make their claims.  They can't --

11      THE COURT:  Just so we can all understand and be

12 on the same page.  We've got paragraph 19 from Mr. Bronz's

13 declaration.  How would you fit that in the analysis under

14 the order?

15      MR. CUTINI:  I believe you have to look at the

16 entire declaration.  I just read it one time quickly, but I

17 believe the entire declaration, when you look at it,

18 explains very carefully why they did not have competent and

19 reliable scientific evidence.

20      THE COURT:  Let's take this one paragraph.  Tell

21 me how that paragraph, as you understand the application,

22 would fit into the analysis.

23      MR. CUTINI:  His explanation of what they should

24 have to have competent and reliable --

25      THE COURT:  What he thinks they should have to

1   have is not the standard.

2          MR. CUTINI:  He also thinks they did not have the

3   proper --

4          THE COURT:  So this paragraph would be irrelevant?

5          MR. CUTINI:  No, it won't be irrelevant.  I think

6   he can explain why what they had was insufficient, did not

7   meet the explicit terms of the order.

8          THE COURT:  What part of the order does this

9   support?

10          MR. CUTINI:  I am not sure without having the

11   whole thing in front of me, but I think this probably goes

12   to the types of evidence that -- remember, the order says

13   expertise of professionals in the relevant area.  This may

14   go to that.  What experts in the relevant area, trained

15   appropriately, think is required for competent and reliable

16   scientific evidence, because the standard is very clear that

17   it's not just what Basic Research thinks or what somebody

18   they claim to be an expert thinks.  That expert or alleged

19   expert, whoever the expert is, has to be qualified in the

20   relevant area.  It has to be consistent with the explicit

21   terms --

22          THE COURT:  Let me tell you how I view that

23   because this may be helpful.  They put up a basis that

24   Dr. Smith says, et cetera.  If the FTC is going to challenge

25   that, they need to come forward to show that Dr. Smith does

1  not qualify as an expert in the relevant area.

2       MR. CUTINI:  Well, I think he's explained why the

3  evidence they have does not meet the standard.  And I don't

4  recall whether he got into the discussion the Court just

5  mentioned, but he carefully explains their claims, what they

6  relied upon for those claims, and why that did not meet the

7  standard.  And he also explains I think what this is going

8  to is what professionals in the relevant area regard as

9  competent and reliable scientific evidence.

10       THE COURT:  We'll leave that for another day.  But

11  as long as you understand that Mr. Blonz -- Dr. Blonz is not

12  allowed to create the criteria.  The order creates the

13  criteria.  Now if he can offer something meaningful as to

14  why those criteria have or have not been met, then, of

15  course, it will be relevant.  But for him to say, in my

16  judgment, you've got to have all of these things, including

17  a double-blind, placebo-controlled study, that's not what

18  the order requires.

19       MR. CUTINI:  It requires what is required in the

20  relevant area.  If that's something that's required in the

21  relevant area, then that would be what's required to meet

22  the terms of the order.

23       THE COURT:  Exactly.

24       MR. CUTINI:  The order is very specific about each

25  claim having appropriate evidence, and the claims are

1    varied.   Whatever the claim is determines what is the

2    relevant area by professionals qualified in that area.   So

3    we think he's clearly qualified in this area and that he's

4    gone through carefully why they don't have the requisite

5    reasonable basis in the relevant area.

6              And I would like to point out also that the

7    discussion about what sort of procedure or what this order

8    means, the language of the order is really an advisory

9    opinion, and the Court has no jurisdiction to say what it

10   means or articulate something without applying the specific

11   terms of the order agreed upon in the settlement agreement

12   to specific facts.   That's what we have given the Court in

13   the summary judgment motion where the Court will apply the

14   specific terms of the order to specific facts.   Just giving

15   an opinion about what the order may mean separate from its

16   application to specific facts is an advisory opinion, and we

17   don't think there is jurisdiction to do that.

18             That's all I have unless the Court has further

19   questions.

20             THE COURT:   I have nothing further.

21             Mr. Burbidge, I think --

22             MR. BURBIDGE:   If I could be of help.   We've

23   already plowed that field on whether it's advisory or

24   whether it's -- it's not what has jurisdiction.   We've filed

25   a declaratory judgment action.   We're entitled to the relief

1   we've asked for.  The Court has granted it.  Unless the

2   Court has questions of me, it's clear.

3               THE COURT:  No.  Thank you.

4               MR. BURBIDGE:  Should I prepare an order?

5               THE COURT:  I'm going to grant the partial motion

6   for summary judgment motion.  I will draft the order in

7   which I attempt to articulate, as I did on the record, my

8   ruling, and we'll proceed on that basis.

9               MR. BURBIDGE:  Thank you, Your Honor.

10              One housekeeping matter, and I don't know how Your

11  Honor wants to deal with it, but we need a scheduling

12  conference in this case.  Should we just make a motion or is

13  it convenient to set something?

14              THE COURT:  Are you unable -- have you talked with

15  the other side and have you been unable to reach agreement

16  on dates?

17              MR. BURBIDGE:  No.  I think we would be able to do

18  that.  However, Your Honor --

19              THE COURT:  What I would suggest is if you reach

20  an agreement on stipulated dates, submit them and they will

21  be fine with me.  If you need my assistance, I will help

22  you.

23              MR. BURBIDGE:  Thank you very much.

24              THE COURT:  Thank you.  We will be in recess.

25              (Whereupon, the proceeding was concluded.)

1                          C E R T I F I C A T E

2

3

4          I hereby certify that the foregoing matter is

5   transcribed from the stenographic notes taken by me and is a

6   true and accurate transcription of the same.

7

8

9

10

11

12

13

14

15

16   PATTI WALKER, CSR—RPR—CP        DATED:
     Official Court Reporter
17   350 South Main Street, #146
     Salt Lake City, Utah  84101
18   801-364-5440

19

20

21

22

23

24

25